IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FELICIA LOPEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-07-1534 |
| | § | |
| KIRK KEMPTHORNE, Secretary of | § | |
| the Department of the Interior, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court in the above referenced cause, alleging employment discrimination under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq.*,[1] are three interrelated motions: (1) Plaintiff Felicia Lopez's second Motion to reinstate (#49), incorporating her first, verified motion to reinstate (#47); (2) Defendant the Secretary of the United States Department of the Interior Kirk Kempthorne's ("the Secretary's") cross motion to enforce settlement agreement (#52); and (3) Lopez's motion to vacate (#53).

---

[1] The Court dismissed Plaintiff's claim under the Rehabilitation Act of 1973, *as amended*, 29 U.S.C. § 701 *et seq.* Instrument #39.

## Procedural Background

On January 14, 2010, this Court granted in part and denied in part the Secretary's motion for summary judgment.  #39.[2]  On April 19, 2010 the Secretary filed a notice of the parties' settlement in mediation.   #43.   The next day the Court issued an order of dismissal "without prejudice to the right of the parties to move for reinstatement within ninety days from the entry of this order on representation that approval of the settlement could not be obtained from principals."  #45.  On April 28, 2010, Lopez filed her first motion to reinstate the case (#47), which was followed by a second, #49, filed on June 9, 2010, and which incorporates the first.   The agreement to settle executed at the mediation is Exhibit A to #52.   The final written settlement agreement which Lopez refuses to sign is attached as Exhibit C to #47 and Exhibit C to #48.

## Lopez's Argument

With her own, self-serving affidavit dated June 9, 2010 in support (Exhibit A to #49)), Lopez moves to vacate the judgment of dismissal, set aside the settlement agreement, and reinstate this case, arguing that she became ill on April 12, 2010 and remained ill from a tension headache the whole week in which the mediation and settlement took place.

---

[2] Also available, *Lopez v, Kempthorne*, No. H-07-1534, 2010 WL 174889 (S.D. Tex. Jan. 14, 2010).

Lopez states that on April 14, 2010[3] through her attorney, she attempted to reschedule or cancel the mediation set on April 16, 2010. Lopez claims that she was hospitalized on April 15, 2010, was given a prescription for toradol, and began taking the medication after she was discharged, along with Lexapro and Tamazepam. Ex. B to #47.[4] She represents that counsel for the Secretary opposed postponement or cancellation of the mediation because counsel had already traveled from Colorado to Houston on April 15, 2010. Opposing counsel also "expressed an intention to seek travel and mediation expenses against Lopez if she did not attend." Lopez claims that she continued to suffer from pain, anxiety, and disorientation on April 16, 2010, when the mediation

---

[3] Lopez's affidavit is inconsistent:  it states that she called her attorney on April 15, 2010 to inform him that she was going to the hospital and did not know if she would be able to attend the mediation the next day.  She states that "[h]e would not accept the fact that I was sick and insisted that I attend." Ex. a at 1-2,

[4] The Secretary points out that Lopez's medical and pharmacy-related papers, submitted to demonstrate incapacity, constitute inadmissible hearsay, without an affidavit to establish that they are business records.  Moreover, even if admissible, all they establish is that Lopez went to the Methodist Sugar Land Hospital's Emergency Department on April 15, 2010, the day before the mediation, and that she was discharged with a diagnosis of headache without being admitted to the hospital.  She was prescribed medicine that could have side effects in some people, but the hospital instructions told her to follow up with her physician if the headache did not resolve within twenty-four hours.  Lopez has not alleged that she followed up with any physician.  She fails to provide an affidavit from any treating physician or expert witness to support her claim of incapacity.
The Court agrees.  Lopez's self-serving affidavit is conclusory and without admissible corroborative evidence.

was conducted.  No one at the mediation asked her about her mental status or physical condition even though she maintains that they knew or should have known that she was sick.[5]  She reports that late in the afternoon she "suddenly and unexpectedly agreed to the settlement proposed and submitted" by Defendant and signed the paper work without privately consulting with her attorney, and that thereafter all the parties left quickly.  She argues that nothing in the settlement agreement states that she waived any rights to contest the agreement once the effects of her illness and medication wore off, even though they knew or should have known that she was sick.[6]  Around May 11, 2010 Defendant sent a final settlement agreement to Lopez, which she claims did not conform to the agreement she signed at the mediation in four ways:  (1) the mediation agreement did not require Lopez to apply for a Discontinued Service Retirement, but the final agreement does; (2) the final agreement bars Lopez from any further employment with the

---

[5] In her affidavit she asserts that she heard her attorney tell the mediator that she had been hospitalized the day before. Ex, A at 3.

[6] Her affidavit states, "Before I signed the documents, both the mediator and [my attorney] informed me that the settlement could not become final until all the parties and the Court signed more paperwork; therefore, I did not believe I was signing a final settlement agreement at the time.  The meaning of the language in the mediation agreement was never explained to me."  #49, Ex. A at 3.

Department,[7] unlike the mediation agreement; (3) the final agreement attempts to circumvent Office of Personnel Management rules and regulations regarding employee terminations, unlike the mediation agreement; and (4) the final settlement provides for direct payment of $30,000 to her attorney, unlike the mediation agreement, and that money would come out of Lopez's recovery.[8]

---

[7] Lopez urges that she is fifty-seven years old and unlikely to find another job with another employer. At the same time she argues that if the settlement agreement is enforced, she will not be able to retire until she is at least seventy-five, if ever.
In response, #52 at 2, the Secretary responds that the question whether Plaintiff could work for the Department of the Interior in the future

was never discussed at the mediation. Defendant agrees. However, because the Parties agreed at the mediation that Plaintiff would retire and be paid a lump sum, Defendant assumed the impending end of an employer-employee relationship and that Plaintiff would not be interested in future work with the Defendant. Nor did Plaintiff suggest at the mediation that she desired further employment with Defendant. Defendant is agreeable to withdrawing this provision from the Draft Settlement Document. See Exhibit F [to #52].

[8] Lopez charges her first attorney with incompetence, malpractice, and collusion with Defendant, and insists she had an hourly fee arrangement with him. Her affidavit states that she paid him $200 per hour pursuant to a written contract, of which she does not have a copy, and that she was current on her bills and did not owe him any money, and thus she objects to the settlement agreement which would directly pay him $30,000 as unjust enrichment. #49, Ex. A at 4. She has since obtained other representation.
The Secretary responds that Plaintiff has cited no authority in support of her conclusory charges of collusion and malpractice claims nor any facts to support them. The only time that defense counsel saw Plaintiff's attorney at the mediation was at the initial joint session at the outset of the mediation, where counsel from both sides made an opening statement; Defense counsel is not aware of any private conversations with Plaintiff without her

Lopez also complains that the new agreement subjects her to a new, unfamiliar administrative process, and that if she refuses to comply, she would be terminated with no benefits.  #49, Ex. A at 4. Lopez claims that she will receive less retirement pay and benefits and less retirement money in her annuity under the new retirement plan, which is based on salaries in Lakewood, Colorado, not on the higher salaries in Houston, Texas.[9]  She fears that the Department might use the process to terminate her without paying any settlement funds.  Ex. A to #49.  She concludes that there was never a "meeting of the minds" in the settlement negotiations.[10]

---

attorney and the Department's representatives at the mediation. #52, Ex. C (Declaration of Nancy Leonard).  Furthermore, Plaintiff's remedy is to pursue such a claim through a separate malpractice suit or disciplinary complaint.  The Court agrees that she has failed to support her allegations with admissible evidence here and that she has the option to seek relief through a separate action.

[9]  In response with supporting documentation the Secretary states that Plaintiff's allegation is incorrect because her retirement annuity pay will be based on her three highest salaries earned in Houston, Texas, not on the Colorado location.  #52 at 2 and Exhibit F (Declaration of Deborah J, Lloyd, Chief of Human Resources Branch of the Department of the Interior, Mineral Management Service/WASC in Lakewood, Colorado attesting to the accuracy of the Secretary's response).

[10]  The Secretary responds, and the Court agrees, that a "meeting of the minds" between the parties occurred on April 16, 2010 as a result of a full day of mediation, as expressly stated in the Agreement to Settle.  Ex. A to #52.  He points out all the terms of the Agreement to Settle which were incorporated into the proposed Draft Settlement Document and the detailed steps necessary to implement them (#52 at 3, Exhibits D and F).  The Agreement to Settle (Exhibit A at 2) states, "The parties agree to cooperate with each other in drafting and execution of such documents as are reasonably requested or required to implement the terms and spirit

In sum, the settlement agreement terminated Lopez from her position in the Department. Lopez states that she had regrets about her decision immediately after the effects of her illness and the medication wore off. She claims that she promptly notified her attorney that she did not want to continue with the settlement or sign any additional settlement papers, and he notified Defendant. Lopez cites Federal Rule of Civil Procedure 60(b),[11] which permits the setting aside of an order of dismissal for reasons as minimal as a mistake, surprise and excusable neglect. Lopez asserts that she was at the mediation under duress[12] after her attorney convinced

---

of this agreement" and that Defendant "shall deliver drafts of any settlement documents to the other party by April 23, 2010."

[11] The Secretary correctly points out that because Lopez filed her motion to reinstate within ten days of the Court's conditional order of dismissal, it should be treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). *Foman v. Davis*, 371 U.S. 178 (1962); *Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 669 (5th Cir. 1986). The Secretary further argues that Rule 59 does not apply either, because it requires a final judgment, not a conditional dismissal order, as is the case here. *James by James v. Sadler*, 909 F.2d 834, 836 (5th Cir. 1990)(the policy interests of Rules 59 and 60 in securing the finality of judgments do not apply to interlocutory dismissal orders); *Kinan v. Cohen*, 268 F.3d 27, 33 & n.6 (1st Cir. 2001)(the strictures of Rule 60(b) do not apply to a conditional dismissal order).

[12]   In *Lee v. Hunt*, 631 F.2d 1171, 1178 (5th Cir. 1980), *cert. denied*, 454 U.S. 834 (1981), the Fifth Circuit described the high degree of proof necessary to prove duress or coercion under Texas law, which the Court finds that Lopez clearly fails to reach here:

> Our courts of Texas have consistently followed the rule, as a matter of law, that (1) there can be no duress unless there is a threat to do some act which the party threatening has no legal right to do; (2) there must be

her to attend and that she lacked the capacity and the factual knowledge to consent.   She argues that her agreement at the mediation was "mostly the result of the outside influences already described" and that she promptly informed Defendant of her intention to renounce her approval.   She contends that she is entitled to a setting aside of the mediation agreement and reinstatement of the case under her right to due process under the United States Constitution and other applicable laws, and that enforcing a one-sided agreement would be a miscarriage of justice. Lopez also claims that Defendant was served with her motion to reinstate before the Secretary sent the final settlement proposal, and that the Secretary has threatened to terminate her without any settlement pay or retirement benefits if she does not sign it or contests it in any way.

She expresses general concern about the financial burden on her, fearing that the Department would have sought costs from her if she had cancelled the mediation.   She also places much of the blame on her original attorney's alleged, but unsubstantiated, negligence and breach of fiduciary duty.

---

some illegal exaction or some fraud or deception; (3) the restraint must be imminent and such as to destroy free agency without present means of protection. . . . In order to prove undue influence, one must demonstrate that "persuasion, entreaty, importunity, argument, intercession and solicitation" were so strong as to "subvert and overthrow the will of the person to whom they are directed."   [citations omitted]

-8-

### The Secretary's Argument

The Secretary opposes Lopez's motion to reinstate and seeks to enforce the settlement, which he insists is valid and that there is no justification for setting it aside.  Noting that Plaintiff does not allege that she advised the defense or the mediator that she was in pain and medicated at the mediation on April 16, 2010, the Secretary cites the written settlement document signed by all parties and their respective counsel that day.[13]  Ex. A to #52.  He emphasizes that Lopez had counsel throughout the mediation to advise her and that Plaintiff and her attorney agreed to be bound by the agreement.  The document, itself, highlights its binding nature: **"NOTWITHSTANDING ANYTHING ELSE CONTAINED IN THIS AGREEMENT, THE PARTIES HERETO INTEND TO BE BOUND BY THIS AGREEMENT AND IT IS BINDING UPON ALL,"** and **"THE PARTIES AGREE THAT THIS AGREEMENT IS NOT SUBJECT TO REVOCATION."**  #47, Ex. C, at ¶¶ 8-9.  Moreover it recites that the parties entered the agreement without duress and after having consulted professionals of their choice.  *Id*. at ¶ 7.  The agreement provides that Plaintiff must execute a release and must enter a judgment resolving the claims.  *Id*. at ¶¶ 1,3,4.

---

[13] The Secretary's motion to enforce settlement was filed on May 19, 2010, at least twenty days before Lopez's affidavit was made.

On April 20, 2010, Lopez's attorney sent an email to defense counsel stating that he was surprised that morning by his client's request to inform counsel that she was "retracting from the mediated agreement.  I have advised it is a binding agreement, and that it has been filed in court."  #48, Ex. 1.[14]  Plaintiff has not executed the release that was sent to her.  Ex. 2 to #48.

The Secretary argues that Plaintiff cannot meet her burden to demonstrate mental incapacity or intoxication to void the contract. Federal law applies in the determination of the validity of a settlement agreement in a case brought under federal anti-discrimination laws.  *Fulgence v. McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981); *Latham v. QCI Corp.*, No. Civ. A. 07-2395, 2009 WL 483208, *1 (S.D. Tex. Feb. 25, 2009)(Harmon, J.).  Public policy favors the settlement of such claims as long as the settlement is knowing and voluntary.  *Fulgence*, 662 F.3d at 1209; *Roberts v. GE*, 781 F.2d 452, 454 (5th Cir. 1986).

*The Restatement (Second) of Contracts* § 12(2) provides, "A natural person who manifests assent to a transaction has full legal capacity to incur contractual duties thereby unless he is . . . (c) mentally ill or defective, or (d) intoxicated."  It further states regarding mental illness,

_____

[14] Plaintiff claims that she and her new attorney were unaware of his email and that it is evidence of collusion between her former attorney and agents of Defendant.

> A person incurs only voidable contractual duties by entering into a transaction if by mental illness or defect
>
> (a) he is unable to understand in a reasonable manner the nature and consequences of the transaction, or
> (b) if he is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition.

*Id.* § 15(1).  Regarding intoxication, *id.* at §16 provides,

> A person incurs only voidable contractual duties by entering into a transaction if the other party has reason to know that by reason of intoxication
>
> (a) he is unable to understand in a reasonable manner the nature and consequences of the transaction, or
> (b) he is unable to act in a reasonable manner in relation to the transaction.

"The party asserting incompetence must prove that status at the time of the disputed transaction, . . . an extremely heavy [burden]."  *Reid v. IBM Corp.*, No. Civ. A. 95-1755, 1997 WL 357969, *8 (S.D.N.Y. June 26, 1997).

The Secretary observes that Lopez recalls many details about the day of mediation and executing the agreement, yet she cannot remember why she signed it.  Noticeably absent are allegations that she advised the mediator or defense counsel that she was under medication and not feeling well.  He observes that while she seems to argue that because on Wednesday, April 14, 2010 defense counsel was advised that something, unidentified, had happened to plaintiff on April 12, 2010 at work that caused her stress and pain, she fails to show how the Secretary was supposed to know on April 16th that she was incompetent to execute a settlement agreement.  The

Secretary comments that there is no evidence that Lopez lacked capacity to contract when she signed the mediated settlement agreement, but there is evidence that she had second thoughts about the terms of the settlement sometime after she agreed to them. #47, Lopez Decl., ¶¶ 6-7. The Secretary urges the Court to require Lopez to abide by the settlement. "Holding otherwise would run counter to three important goals encouraged by our judicial system: voluntary settlement of disputes, the enforcement of agreements according to the objective intent of the parties, and an end to litigation." *Bell v. Schexnayder*, 36 F.3d 447, 450 (5th Cir. 1994).

## Court's Decision

The validity of a settlement agreement is "determined by federal law--at least where the substantive rights and liabilities of the parties derive from federal law." *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984). Under federal law settlement agreements are contracts. *Guidry v. Halliburton Geographical Services, Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). The federal law of contracts "uses the core principles of the common law of contracts that are in force in most states." *Smith v. United States*, 328 F.3d 760, 767 n. 8 (5th Cir. 2003)(per curiam). The Restatements embody core principles of common law. *Deville v. United States ex rel. Dep't of Veterans Affairs*, 202 Fed. Appx. 761, 763 n.3 (5th Cir. 2006)(per curiam). A binding agreement exists where there is a manifestation of mutual assent, usually in

-12-

the form of an offer and an acceptance. *Triche v. Louisiana Ins. Guaranty Assoc.*, No. 08-3931, 2010 WL 891000, \*5 (E.D. La. Mar. 5, 2010), *citing Turner Marine Fleeting, Inc. v. Quality Fab and Mechanical, Inc.*, 2002 WL 31819199, \*4 (E.D. La. Dec. 13, 2002). Where there is a written document purporting to contain a binding settlement agreement, the question of whether an offer was accepted and a contract was formed in primarily a question of law. *Id., citing id.*

This Court agrees with the Secretary that the Agreement signed by all parties at the mediation expressly indicates that the parties contemplated it was a binding and enforceable contract without the option of revocation. During the whole day of mediation Lopez had ample opportunity to state that she was ill or under duress, but did not do so. She provides no evidence of duress. The conclusory statements in her at-times-inconsistent affidavit are unsupported by independent admissible evidence. Many of her expressed fears are speculative. If a party knowingly and voluntarily enters into a settlement, the agreement will not be voided because that party changes his mind later. *Woods v. Denver Dept. of Revenue, Treasure Div.*, 45 F.3d 377, 378 (10th Cir. 1995); *in accord Glass v. Rock Island Refining Co.*, 788 F.2d 450. 454-55 (7th Cir. 1986)("A party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient--'If a party to a Title VII suit who has previously

authorized a settlement changes his mind . . ., that party remains bound by the terms of the agreement.'").

Accordingly, for the reasons stated above, the Court ORDERS that Lopez's motions to reinstate (#47 and 49) and motion to vacate (#53) are DENIED.  The Secretary's cross motion to enforce settlement agreement (#52) is GRANTED, with the exception of the provision that Lopez cannot work for the Department in the future, which the Secretary has agreed to withdraw.  It is further

ORDERED that Plaintiff Felicia Lopez shall forthwith execute the settlement release with the stated modification and shall enter a judgment resolving the claims as otherwise outlined in the settlement agreement.

**SIGNED** at Houston, Texas, this 5th day of November, , 2010.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE